UNTIED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TIA MINTER                                                                              PLAINTIFF

v.                                                        CIVIL ACTION NO.  3:11CV-249-S

LIBERTY MUTUAL FIRE
INSURANCE COMPANY                                                         DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Liberty Mutual Fire Insurance Company withheld from discovery several documents and

portions thereof under claims of attorney-client privilege and of work product doctrine.  Pursuant

to an order dated March 1, 2012 (docket no. 32), the court ordered the materials withheld to be

produced for *in camera* review along with the privilege log tendered to the plaintiff, Ms. Minter.

The court has now reviewed each document produced for its review and must now determine

which, if any should be produced to Ms. Minter.

With rare exception, Liberty Mutual asserted both the work product privilege and the

attorney-client privilege with respect to each document withheld.[1]  Because this is a diversity

case, the court must consult federal law to resolve contested assertions of attorney work product

claims and consult state law to resolve claims of privilege.  *See* Fed. R. Evid. 501; *In re*

*Powerhouse Licensing, LLC,* 441 F.3d 467, 472 (6th Cir. 2006).

---

[1]Liberty Mutual also withheld a few documents on the basis of an asserted "self-critical
analysis" privilege.  No such privilege is available under Kentucky law, however.   *See*
*University of Kentucky v. Courier-Journal & Louisville Times Co.*, 830 S.W.2d 373, 378 (Ky.
1992).

As a preliminary matter, however, the magistrate judge notes that document nos. 641,[2] 660, and 847-849 do not appear to have been produced to the court.   Document nos. 725 and 772 are blank pages not identified as such, but instead withheld on the basis of a claimed privilege.  Document 840 is nothing more than a salutation attached to a letter withheld on the basis of privilege. In addition, many of the documents are duplicates that should have been identified as such and culled.

| FIRST APPEARANCE IN THE FILE | DUPLICATES |
| --- | --- |
| 52-53 | 775-776, 777-778 |
| 654-655 | 656-657 |
| 664-668 | 759-763 |
| 674 | 803 |
| 680-688 | 740-748, 814-822 |
| 712-717 | 789-794, plus the following, which differ only by the omission the highlighting of certain terms that reveal nothing about the litigation strategy or the attorney's impressions: 734-739, 789-794, 796-801, 831-836 |
| 718-724 | 782-788, 824-830 |
| 775-776 | 777-778 |
| 781 | 795, 823 |

The court is willing to review the documents it did not receive, if necessary, after defendant considers their discoverability in light of the opinion below.

---

[2]All of the documents are Bates stamped with a ten character identifier that begins with LM, ends with a number greater than zero, and contains a intervening variable number of zeros. For convenience herein, the court will refer to the documents only by their end number.

A.

In this matter, as is often the case in first-party bad faith claims, there is an inherent tension between the attorney-client privilege and the plaintiff's otherwise legitimate discovery requests.  The Kentucky Supreme Court has repeatedly declared that the attorney-client privilege is generally sacrosanct and may not be overridden, even by an opposing party showing its need to obtain the information contained in privileged communications.  *See, e.g.*, *The St. Luke's Hospitals, Inc. v. Kopowski,* 160 S.W. 3d 771, 776-777 (Ky. 2005).  Yet the Kentucky Supreme Court has also declared that the privilege may be abrogated on occasion, and that the starting point of any analysis regarding which circumstances warrant the overriding of the attorney-client privilege is Kentucky Rule of Evidence 503, which "specifically delineates the circumstances in which the privilege gives way to other considerations."  *St. Luke's Hospital*s, 160 S.W.3d at 777.

The first of the statutorily enumerated exceptions, and the one potentially applicable here, is "furtherance of a crime or fraud."  KRE 503(d)(1).  In this matter, plaintiff's central allegation is one of fraud, because Ms. Minter alleges that her insurer violated the terms of the Unfair Claims Settlement Act, KRS 304.12-230, which was enacted "to protect the public from unfair trade practices and fraud."  *See, e.g., State Farm Mutual Automobile Insurance Company v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1989).

The court is aware that at least one panel of the Kentucky Court of Appeals declined to create an express exception to the attorney-client privilege in bad faith litigation.  In  *George v. Guaranty Nat'l Ins. Co.,* No. 95–CA–1577–MR (Slip Op. Mar. 8, 1996), the Court of Appeals reversed the trial court's decision to grant summary judgment in favor of the insurer with respect

to plaintiff's first-party bad faith claim.  In that case, however, the plaintiffs appealed two issues: whether summary judgment was appropriate and whether the trial court erred when it rejected the plaintiff's request to discover certain correspondence written during the underlying coverage claim between the insurer's attorney and the insurer.   The Court of Appeals, in an unpublished opinion, rejected the plaintiff's contention that an exception to the attorney-client privilege necessarily arose when a claim of bad faith was alleged, noting:  "To develop an exception in bad faith cases against insurers would impede the free flow of information and honest evaluation of claims. In the absence of fraud or criminal activity, an insurer is entitled to the attorney-client privilege to the same extent as other litigants. *George v. Guaranty Nat'l Ins. Co.,* No. 95–CA–1577–MR (Slip Op. Mar. 8, 1996). Kentucky's highest court failed to reach the privilege issue because it concluded summary judgment was properly granted.

In addition, the magistrate judge is mindful of Judge Russell's recent opinion in *Shaheen v. Progressive Cas. Ins. Co.*, 2012 WL 692668 (W.D. Ky. 2012), in which he evaluated the applicability of the attorney-client privilege in a bad faith action.   *Shaheen* dealt with a third-party case, not a first-party case as is present here, but in determining that the privilege has some applicability under Kentucky law in a third-party bad faith action, Judge Russell noted in dicta: "For discovery requests in first-party cases, because the insurance file is created on behalf of the insured, the entire file is typically discoverable by the plaintiff."  2012 WL 692668, *3 (citations omitted).  Although Judge Russell cited cases from other states in support of his observation, the magistrate judge cannot disagree with his analysis, because there is no clear recent guidance from Kentucky's highest court.

Moreover, the magistrate judge is also aware that first-party bad-faith actions against an insurer can only be proved by showing exactly how the company processed the claim and why the company made the decisions it did.  Without the claims file, a contemporaneously-prepared history of the handling of the claim, it is difficult to see how an action for first-party bad faith could be maintained without requiring an overwhelming number of depositions, whose costs would thereby render all but the rare wealthy few first-party bad faith claimants financially unable to proceed.  This court is therefore unwilling to predict that Kentucky's highest court would enter an opinion that would shield portions of a claims file from discovery in a first-party bad faith case on the basis of the attorney-client privilege, and therefore rules that the attorney-client privilege does not shield materials contained in Ms. Minter's underlying claims file.  Any documents not specifically protected from discovery on the basis of the work-product doctrine (*see below*) shall be produced.

### B.

The next question is whether any of the withheld documents might instead be protected from discovery by the work product doctrine, which protects an attorney's trial preparation materials from discovery.  The work product doctrine protects a lawyer's trial preparation materials from discovery, *see Hickman v. Taylor,* 329 U.S. 495, 510-514 (1947), and Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure precludes the discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by [a party's attorney]."  The prohibition may be overcome, however, if the party requesting the material shows "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(II).  More importantly,

the doctrine was created to protect the integrity of the adversarial process in ongoing litigation, and does not typically protect from discovery work product created in other cases or concluded suits.

To determine whether a document has been prepared "in anticipation of litigation," this court must ask two questions: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009). The party claiming protection carries the burden of showing that anticipated litigation was the driving force behind the preparation of each requested document. *Id.* (internal citations omitted).

The materials at issue in this matter are the contents of the claims file for the underlying litigation. All of the documents were created before plaintiff filed her complaint in this case. During the end of negotiations, a bad-faith lawsuit might reasonably have been anticipated, but the majority of the file was created before that.

The court notes, however, that defendant was overly broad in asserting the work product privilege, and included among the putatively privileged documents, mere transmittal letters that contained no attorney impressions or strategy, but merely transmitted without any substantive comment, documents received by the attorney to the insurance company. If defendant wants these [Document nos. 1, 3, 648, 837, 838 and 846] they shall be produced without redaction.

Almost one-fifth of the documents, perhaps as much as one-quarter to one-third, are multiple copies of draft responses to interrogatories, which appear to differ little from the responses ultimately produced [Document nos. 712-724, 734-739]. These are attorney-work

product, but a more thorough review of the withheld documents would have revealed to Liberty Mutual that there was little (if anything) in there worth fighting over and thereby unnecessarily expending judicial resources.  Nevertheless, Ms. Minter may discover them if she wishes.

There are also several versions of a master medical chronology prepared by defendant's counsel to assist defendant in evaluating plaintiff's claims [Document nos. 680-688].  This is unquestionably attorney-work product, but it contains no extraneous commentary regarding the significance of any entry.  It could be prepared just as easily by plaintiff and her current counsel, if they were aware of which of her medical files the defendant reviewed.  Accordingly, it shall be produced, but defendant may redact the third column.

The remainder of the documents shall be produced unredacted.

C.

For the reasons discussed above, **IT IS HEREBY ORDERED** that defendant shall, consistent with the court's analysis above, produce the documents submitted for *in camera* review  within **twenty days** of the date of entry of this order.