UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TIA MINTER                                                                                            PLAINTIFF

v.                                                                                         NO. 3:11-CV-00249-S

LIBERT MUTUAL FIRE INSURANCE                                  DEFENDANT
COMPANY

## MEMORANDUM OPINION

This matter is before the court on the motion of the Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), for summary judgment as to all counts of the First Amended Complaint of the Plaintiff, Tia Minter ("Minter"). DN 81-13. Fully briefed, the matter is now ripe for adjudication. Having considered the parties' respective positions, the court concludes that there are no material issues of fact in dispute. For the reasons set forth below, the court will grant Defendants' motion for summary judgment. DN 81-13.

**I.**

This case arose from events that followed a motor vehicle accident involving Plaintiff, Minter, and a third-party tortfeasor, Debra Floeter ("Floeter"), in Jefferson County, Kentucky. The Defendant, Liberty Mutual, is Minter's insurer and became involved in the underlying controversy when Minter claimed underinsured motorists ("UIM") benefits under the insurance policy she maintained with Liberty Mutual. The parties do not dispute the following facts.

On August 29, 2007, a third-party tortfeasor, Floeter, rear-ended the vehicle Minter was operating as it was stopped in traffic. The impact caused Minter's vehicle to collide with the vehicle stopped in front of her, damaging both the rear and front of her vehicle. DN 12-3. Minter did not report any injuries to the officer whom responded to the accident. *Id*. But she does

allege that, on her way home, she experienced pain in her left arm and hand – and that within three to five days, she began experiencing constant pain in her neck that radiated to her left shoulder, arm, and hand. She did not, however, seek medical treatment for these ailments until January 22, 2008, over four months later.

On January 22, Minter underwent an MRI examination that revealed a "very large extruded disc at C5-6 [vertrebrae] to the left causing C6 compression and lateral recess." DN 81-3, p. 1. She, accordingly, sought treatment at River City Orthopedics, and eventually underwent disc replacement surgery – specifically, an anterior cervical decompression at C5-C6 and insertion of an artificial cervical disk. *Id*. She reports that the surgery relieved some, but not all, of her sympto DN 88. So on April 1, 2008, Minter made a reparations claim on her Liberty Mutual policy for costs associated with the accident and surgery. Liberty Mutual did not oblige but did note a potential UIM claim in Minter's file and established a reserve of $50,000 on her $100,000 UIM policy limit.

On May 14, 2009, Minter's counsel sent State Farm Mutual Automobile Insurance Company ("State Farm"), Floeter's insurer, an offer to settle Minter's claim against Floeter for State Farm's policy limit of $100,000. When Minter's counsel recognized that Floeter's coverage was less than his anticipated value of Minter's claim, rendering her "underinsured", he also sent a letter to Liberty Mutual indicating that he would be making a demand for Minter's UIM policy limit.

Shortly thereafter, State Farm refused to pay the Floeter's policy limit, so Minter filed a complaint against her for negligence in Jefferson Circuit Court on June 25, 2009. DN 81-4. On February 2, 2010, over seven months later, State Farm offered its full policy limit to settle Minter's claim against Floeter. Then Minter's counsel provided Liberty Mutual a *Coots* letter,

informing Liberty Mutual, among other things, of State Farm's offer to settle and that Floeter's policy limit was "grossly inadequate" in light of the damages that Minter could recover; therefore, he demanded that Liberty Mutual pay her UIM policy limit of $100,000. And on March 30, when Liberty Mutual had still not responded to the *Coots* letter and demand, Minter amended her complaint to add Liberty Mutual as a defendant and assert an underinsured motorist's claim against it. DN 88-5.

Around this time, Liberty Mutual took several steps in investigating Minter's claim. It made discovery requests, deposed Minter and five of her previous co-workers, had Minter independently medically examined, and subpoenaed all of her medical records. Then, on January 6, 2011, Liberty Mutual offered to settle Minter's UIM claims for $75,000. She rejected this offer, and, on January 13, Liberty Mutual offered to settle for the $100,000 policy limit. Minter accepted the offer, signed a Release, DN 81-10, and the court entered an Agreed Order Dismissing Settled Claims Against Liberty Mutual. DN 81-11.

On March 30, 2011, Minter filed this action against Liberty Mutual alleging that it had breached its duty to settle her UIM claim in good faith in violation of Kentucky's Unfair Claim Settlement Practices Act and the common law tort of bad faith. DN 1-1. Liberty Mutual removed the case to this Court based on diversity jurisdiction. With leave of court, Minter then filed her First Amended Complaint, asserting the following claims against Liberty Mutual: (1) violation of Kentucky's Unfair Claim Settlement Practices Act ("UCSPA"), Ky. Rev. Stat. Ann. §§ 304.12-230, 304.12-235 (Count I); (2) common law bad faith (Count II); and (3) violation of Kentucky's Consumer Protection Act ("KCPA"), Ky. Rev. Stat. Ann. § 367.220 et seq. (Count III). DN 1; DN 42. In her First Amended Complaint, Minter alleges that she suffered financially, has been embarrassed, inconvenienced, and has suffered financial detriment because of the delay

in payment of her claims. DN 42. She demands damages for her inconvenience, anxiety, mental anguish, and other compensatory damages caused by Defendant's alleged bad faith and she claims punitive damages to "punish and deter Liberty Mutual and others from engaging in such conduct." *Id.* Minter now admits, however, that she suffered no financial damages as a result of Liberty Mutual's conduct. DN 81-12.

Defendant filed a motion for summary judgment on each count of the First Amended Complaint. We will now address the merits of the motion.

## II.

A court may grant a motion for summary judgment if it finds that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). However, the nonmoving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits, to support its clai *Celotex*, 477 U.S. at 324. It must present specific facts showing that a genuine factual

issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

**III.**

Defendants contend that they are entitled to summary judgment on each count of the First Amended Complaint. We address these claims below.

**A. Counts I and II: Liberty Mutual's Violation of the Unfair Claims Settlement Practices Act and Common Law Bad Faith**

Plaintiff alleges that Liberty Mutual violated the Unfair Claims Settlement Practices Act ("UCSPA"), Ky. Rev. Stat. Ann. § 3054.12-320, and committed the common law tort of bad faith by engaging in various bad faith conduct aimed at delaying or denying settlement of her underinsured motorist claim. DN 42. Because "[a] single test under Kentucky law exists for the merits of bad-faith claims, whether . . . brought under common law or statute," *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006), the Court will analyze Plaintiff's UCSPA and common law bad faith claims together. *Cobb King v. Liberty Mut. Inc. Co.*, 54 F. App'x 833, 836 (6th Cir. 2003).

In *Wittmer v. Jones*, the "leading case on 'bad faith' in Kentucky," the Supreme Court of Kentucky established three base-level requirements that an insured must prove in order to prevail against an insurance company for bad faith refusal to pay the insured's claim:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). The parties do not dispute that these are the elements of a bad-faith claim; rather, they dispute the effect that other language in *Wittmer* has on Minter's burden of production under these claims – specifically, the language indicating that "there can be no such thing as a 'technical violation' of the USCPA." *Id*; DN 81, p. 12; DN 88, p. 18. That this language requires that Minter to prove compensable damages is the foundation of the Liberty Mutual's motion. Thus, we must determine the impact of this language; then, if we determine that it does mandate that a plaintiff allege compensable damages before he or she can recover for bad faith, we must assess whether Minter has met this condition.

Liberty Mutual argues that *Wittmer*'s "technical violation" language and, especially, those cases interpreting it make clear that "a condition precedent to bringing a statutory bad faith action is that the claimant was damaged by reason of the violation of the statute." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1997). Minter, it contends, cannot show, and does not even allege, any such damages. DN 81-13. Minter, on the other hand, argues that case law and the UCSPA do not require that she show actual, compensable damages in order be entitled to punitive damages for Liberty Mutual's bad faith. DN 88. But the Court finds that Minter is mistaken as to the current state of Kentucky law.

The general rule in Kentucky is that, absent an assertion of actual damages, a plaintiff may not submit the issue of punitive damages to a jury. *Dill v. Greyhound Corp.*, 435 F.2d 231, 239 (6th Cir. 1970) (explaining that, under Kentucky law, "[a]n award of punitive damages where no actual damage is found, is not authorized); *Estep v. Werner*, 780 S.W.2d 604, 607 (Ky. 1989) (finding punitive damages unrecoverable because the movant failed to demonstrate an injury for which compensatory damages might be awarded); *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky. Ct. App. 1980) (holding that absent "a factual allegation of actual compensatory

damages, punitive recoveries cannot be sustained."). This is in harmony with the Supreme Court of the United States' view that "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 432 (2003). Thus, absent some indication to the contrary – whether in a cause of action's statutory scheme, the precedent examining it, or otherwise – a plaintiff seeking punitive damages under Kentucky law must first demonstrate some compensable injury. *See Estep*, 780 S.W.2d at 607. Minter points to no such exception for bad-faith claims; nor could she, as Kentucky's jurisprudence on this issue is well-settled.

In fact, the Supreme Court of Kentucky has specifically held that, contrary to Minter's assertion, "[a]bsent resultant damage, there can be no cause of action premised upon [a] violation of . . . the UCSPA." *Glass*, 996 S.W.2d at 454. Another court found that "the UCSPA contains no provision permitting a claim for punitive damages absent a showing of compensatory damages, or . . . that the claimant was injured by actions that violated the statute." *Exel, Inc. v. Liberty Mut. Fire Ins. Co.*, 2011 WL 1733553, at *3 (Ky. Ct. App. May 6, 2011). Even this Court has, not coincidentally, steadfastly agreed. *Meador v. Indiana Ins. Co.*, No. 1:05CV206TBR, 2007 WL 1098208, at *8 (W.D. Ky. Apr. 12, 2007) (noting the resultant damage requirement under the UCSPA)(citing *Glass*, 996 S.W.2d at 454) *aff'd sub nom. Meador v. Houchens Indus., Inc.*, 279 F. App'x 385 (6th Cir. 2008).

Yet, Minter argues that, under *Commonwealth Dept. of Agriculture v. Vinson*, 30 S.W.3d 162, 165-66 (Ky. 2000), she can recover punitive damages without showing compensable damages. DN 88, p. 25. In *Vinson*, the Supreme Court of Kentucky interpreted Ky. Rev. Stat. Ann. § 31.103(2), a statute that explicitly allows plaintiffs to recover for "injunctive relief or punitive damages, or both" – language that it found demonstrated the "General Assembly['s]

inten[tion] that punitive damages might be awarded in addition to equitable relief *or separately*" under that scheme. *Vinson*, 30 S.W.3d at 165 (emphasis added). The UCSPA, however, contains no such language, and *Vinson* is inapplicable. *See Exel*, 2011 WL 1733553, at *2 (distinguishing *Vinson* and bad-faith claims under the UCSPA). As such, Minter must show a basis for compensatory damages, or Liberty Mutual is entitled to summary judgment as a matter of law. *See Glass*, 996 S.W.2d at 454.

Acknowledging that this is the rule, Liberty Mutual goes on to argue that it is entitled to summary judgment on Minter's bad-faith claims because she has not shown any compensable damages. DN 81-13, p. 7-12. Specifically, it alleges that Minter has put forth inadequate proof of both emotional and financial damages to survive summary judgment. *Id*. The Court agrees. And because Minter does not contest that she did not suffer financial damages as a result of Liberty Mutual's alleged bad faith, *see* DN 88, we limit the following discussion to evidence of her emotional damages.

Under a UCSPA or common law bad-faith claim, damages for anxiety and mental anguish *are recoverable*. *Glass*, 996 S.W.2d at 454 (citing *FB Insurance Co. v. Jones*, 864 S.W.2d 926 (Ky. Ct. App. 1993)).[1] However, "entitlement to such damages requires either direct

---

[1] Liberty Mutual incorrectly asserts that, in order to recover emotional distress damages, Minter must meet the strict standard of proof that is required for a Negligent or Intentional Infliction of Emotional Distress claim ("NIED" and "IIED"). DN 81-13 (citing *Osborne v. Keeney*, 399 S.W. 3d 1 (Ky. 2012)(discussing the proof required to prevail on a NIED claim); *Powell v. Tosh*, 2013 WL 1878934 (W.D. Ky. May 3, 2013) (discussing NIED under Kentucky law); *Farmer v. Dixon Electrical Systems and Contracting, Inc*., 2013 WL 2405547, at *9 (E.D. Ky. May 31, 2013)(discussing IIED under Kentucky law). The high standard makes sense in those cases, as the elements of such a claim specifically require "severe or serious emotional injury." *Osborne*, 399 S.W. 3d at 17. Here, bad-faith conduct in settling a claim is alleged to have caused the Plaintiff emotional harm. This is not a claim sounding in negligence, NIED, or IIED. Liberty Mutual cites no authority applying *Osborne* in the context of bad faith. Nor could it, because plaintiffs claiming statutory violations have recovered for humiliation, embarrassment, or nervous shock, and the courts allowing those recoveries did not require evidence of serious or severe emotional injury. *See, e.g.*, *Kentucky Comm'n on Human Rights v. Fraser,* 625 S.W.2d 852, 856 (Ky. 1981) (allowing the plaintiff to recover for mere embarrassment and humiliation caused by a violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344.200, et seq); *Louisville & N.R. Co. v. Ritchel*, 147 S.W. 411, 414 (Ky. 1912) (allowing the plaintiff to recover nominal damages for her humiliation and nervousness caused by a conductor's violation of his statutory duty to assign passengers to the proper coach); *Mountain Clay, Inc. v. Com., Comm'n on Human Rights*, 830 S.W.2d

or circumstantial evidence from which the jury could infer that anxiety or mental anguish in fact occurred. The proof must be clear and satisfactory; and evidence based on conjecture will not support a recovery for such damages." *Id.* (citations omitted).

Here, given Minter's argument that compensable damages are not a prerequisite to recovering punitive damages for bad faith, it comes as no surprise that she has not shown enough emotional damages to survive summary judgment. In her response to Liberty Mutual's Motion of Summary Judgment, Minter simply states that:

> . . . Liberty mutual seeks to minimize the embarrassment and emotional distress [she] experienced when, after suffering serious permanent injury, she made a claim for insurance benefits and her own mutual insurance company responded by ignoring her, then using its superior economic position to force her to file suit, then to delay, and then to use deceit in an attempt to extort a more favorable settlement. Liberty Mutual dismisses the emotional distress and embarrassment she suffered when her insurance company deposed five of her former co-workers, seeking evidence that she hid an injury or pre-existing condition and that she was pursuing a fraudulent claim . . . . It dismisses the emotional distress that she felt after waiting years for her insurance company to finally respond to her claim for benefits, and to have it then offer an amount that is patently less that the amount to which she was contractually entitled with a threat to delay further . . . .

DN 88, p. 25. But Minter cites nothing in the record to support these bare conclusions about her emotional state. She merely recites Liberty Mutual's alleged misconduct and suggests that it caused her some non-specific emotional distress and embarrassment. With neither direct nor circumstantial evidence, these uncited statements by counsel are nothing more than that which the *Glass* court labeled as inadequate: evidence based on conjecture. *See* Fed. R. Civ. P. 56(1)(mandating that a party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of the record for purposes of summary judgment). The Court has no choice but to find accordingly.

---

395, 397 (Ky. Ct. App. 1992) (allowing the plaintiff to recover for embarrassment caused by her employer's violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344.200, et seq).

Because "mere conclusory allegations are not sufficient to withstand a motion for summary judgment," *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990), Minter has not presented a genuine issue of material fact as to actual, compensable damages. Therefore, she has not satisfied her burden under *Wittmer* and its progeny, and Liberty Mutual is entitled to summary judgment on Counts I and II.

**B. Counts III: Liberty Mutual's Violation of the Kentucky Consumer Protection Act**

Plaintiff alleges that Liberty Mutual engaged in conduct that was unfair, false, misleading and deceptive in violation of the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. Ann. § 367.170. She states that she purchased her insurance policy from Liberty Mutual with the reasonable expectation that Liberty Mutual would provide her $100,000 in underinsured motorist coverage and pay her the full amount of benefits if she ever suffered uncompensated injuries that reached that amount. DN 88, p. 29. This expectation was violated, she argues, when Liberty Mutual subjected her to misleading and deceitful negotiating tactics that it employed in an attempt to extort a more favorable settlement from her, which the KCPA prohibits. *Id.* Critical here, she also contends that she need not prove "actual damages" under the KCPA, and that Liberty Mutual's conduct, coupled with her deprivation, albeit temporary, of the full policy amount, constituted an "ascertainable loss of money or property" under KCPA § 367.220, entitling her to punitive damages. *Id.*

Liberty Mutual denies that Minter suffered an "ascertainable loss" under the KCPA. Its argument is analogous to that which in defeat of Plaintiff's bad-faith claims above – that Minter may not proceed on her KCPA claim because she has shown no compensable damages caused by Liberty Mutual's alleged violation. The KCPA's requirement that a person suffer an "ascertainable loss of money or property" before filing suit warrants the Court's dismissal of

Minter's claim as a matter of law, it reasons, as she has admittedly suffered no such loss. The Court agrees.

We turn first to the relevant provision of the KCPA, Ky. Rev. Stat. Ann. § 367.220. It provides that:

> (1) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers *any ascertainable loss of money or property, real or personal*, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action under the rules of Civil Procedure . . . .

Ky. Rev. Stat. Ann. § 367.220 (emphasis added). This Court has twice construed the phrase "ascertainable loss of money or property" under the KCPA and found that it means "evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss" or that she "suffer[ed] harm." *M.T. v. Saum*, 1:12-CV-101-TBR, __ F. Supp. 2d__, 2014 WL 971667, at *3 (W.D. Ky. Mar. 12, 2014) (quoting *Holmes v. Countrywide Fin. Corp.*, 2012 WL 2873892, at *14 (W.D. Ky. July 12, 2012)). Plaintiff's arguments fail to address jurisprudence.

Nor does the additional language indicating that "[n]othing in th[at] subsection shall be construed to limit a person's right to seek punitive damages where appropriate," Ky. Rev. Stat. Ann. § 367.220(1), alter this result. As explained in *Ford Motor Co. v. Mayes*, this phrase "does not purport to expand the right to claim punitive damages. It only makes clear that the Consumer Protection Act did not limit a right to punitive damages where one previously existed." 575 S.W.2d 480, 487 (Ky. Ct. App. 1978). And as discussed in detail above, *see* III.A., the general rule in Kentucky is that, absent a showing of actual damages, the Court will not present the issue of punitive damages to a jury. *Estep*, 780 S.W.2d at 607. It is clear that the KCPA does require proof that the plaintiff suffered an actual injury.

Here, Liberty Mutual did, in fact, pay the full amount of Minter's UIM benefits. The UIM benefits cannot, then, be the source of her alleged injury. Moreover, Liberty Mutual's

alleged denial of Minter's intangible "right to be dealt with fairly, truthfully, and without being misled or deceived" is neither capable of redress nor the sort of ascertainable loss that the KCPA recognizes. *See Saum*, 2014 WL 971667, at *3 (expanding "ascertainable loss of money or property" to include personal injuries); *Am. Motors Corp. v. Addington*, 82-CA-2624-MR, 1984 WL 588048, at *6 (Ky. Ct. App. Apr. 6, 1984) (explaining that the KCPA protects injuries that are capable of redress). As such, Liberty Mutual is correct that Minter must demonstrate some compensable injury under Ky. Rev. Stat. Ann. § 367.220(1) and that she has failed to meet this burden. Therefore, there is no genuine issue of fact as to whether Minter suffered an "ascertainable loss" under the KCPA, and Liberty Mutual is entitled to summary judgment on Count III.

**IV.**

For the reasons set forth herein, Defendant's motion for summary judgment, DN 81-13, will be granted as to all counts of the First Amended Complaint. DN 42. A separate order and judgment will be entered this date in accordance with this Memorandum Opinion dismissing this action with prejudice.

September 30, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**